**BAXTER, County Treasurer, v. RUSK COUNTY et al.   (No. 3582.)**

Court of Civil Appeals of Texas.   Texarkana.
Nov. 19, 1928.

Rehearing Denied Nov. 29, 1928.

R. T. Jones and J. W. McDavid, both of Henderson, for appellant.

Futch & Cooper and Victor A. Smith, all of Henderson, for appellees.

LEVY, J.   The commissioners' court of Rusk county refused to audit and allow an account for certain commissions as fees of office presented as a claim against the county by the appellant, the county treasurer. She timely filed suit founded upon the entire claim. The sum of the fees claimed is $2,-760.16. The county answered, in substance, that there was due and payable the sum of

$337.99, which had been credited and allowed at the time by the commissioners' court, and tendered that sum into court, and denied that there was any more commissions owing and not paid to the treasurer. After hearing the evidence the court peremptorily instructed the jury to return a verdict in favor of the treasurer for the sum only of $337.99.

The principal question on appeal is that of whether or not the appellant was entitled to receive and have paid commissions in a greater sum than the $337.99 tendered. The question becomes one of pure law, as the evidence is practically undisputed. The appellant was the duly elected, qualified, and acting county treasurer of Rusk county. She was elected in 1922, 1924, and 1926. The present claim for commissions begins with the month of July, 1925, and is here considered according to items stated.

■ Item 1. Commissions claimed to be due and earned during the period of time between July, 1925, and January 1, 1926, viz.: "2½ per cent. for receiving and disbursing $4,133.38 fine money—$118.80 less $2.33 paid, $116.66." The commissioners' court refused to allow "2½ per cent.," but did allow and pay appellant "1/20 of one per cent." commissions on the full sum stated in the account. The sum paid is admitted as a credit. The county's claim that only "1/20 of one per cent." was due and payable on this item was founded upon the order of the commissioners' court duly made at the regular July term, 1925, reading:

"It is hereby ordered and decreed by the court that all orders heretofore made by the court affecting the fees of the county treasurer are hereby canceled and no longer in force.

"Second It is hereby ordered and decreed by the court that from and after this date the county treasurer shall receive the following fees and receipts and disbursements: two-thirds of one per cent. on the moneys derived from the 75 cents tax rate of the county. Also two-thirds of one per cent. of the automobile tax collected for the county; one-sixteenth of one per cent. on the interest and sinking fund and the construction fund; one-twentieth of one per cent. on all other funds not specified above."

The appellant predicated the right to receive "2½ per cent." upon the ground that the order of July, 1925, was ineffectual and inoperative because theretofore the commissioners' court had made an order at the regular February term of 1925 fixing the commissions of the treasurer, and that such order was final and unchangeable during the year 1925. The order of February, 1925, failed in any wise to cover or make provision for commissions on moneys collected from fines. The settled rule of law is that when commissions are not fixed by order of

the commissioners' court the county treasurer is entitled to receive the maximum fees of the statute. Bastrop Co. v. Hearn, 70 Tex. 563, 8 S. W. 302; Montgomery County v Talley (Tex. Civ. App.) 169 S. W 1141. But, as firmly concluded in the case of Bastrop Co. v. Hearn, supra, "the law prescribes no time when the court shall fix the compensation to the county treasurer for receiving and disbursing the public moneys; nor is there any inhibition to the changing of the rate of percentage after it has been once fixed." The limitation, however, upon the authority to change an existing order fixing the percentage of compensation, is that it is not allowable to reduce the compensation earned for past services. Montgomery County v. Talley (Tex. Civ App.) 169 S. W 1141. The order of July, 1925, was operative, and so intended to be, from and after the time of its entry; and there is no contention that the percentage claimed was for compensation for services prior to the date of the order. The sum of money arising from fines on which the percentage of 2½ per cent. was claimed came into appellant's hands, as she testified, "between the dates of July 1, 1925, and January 1, 1926." She further testified:

"I am not claiming anything prior to July, 1925, but am claiming from then up to the time of filing of my petition, which was filed July 16, 1927."

It is clear that the order of July, 1925, could not be held ineffective and inoperative to the facts upon the ground that it reduced compensation for past services. Therefore the appellant's contention cannot prevail that the commissioners' court was not authorized to pass the order of July, 1925. The terms of the July order reading "one-twentieth of one per cent. on all funds not specified above" would include "moneys from fines," and govern the percentage payable.

■ Item 2. Commissions claimed to be due and earned during the year 1926, viz. "2½ per cent. for receiving and disbursing $2,263.-00 fine money—$113.14;" "2½ per cent. for receiving and disbursing $932.25 of excess fees of office allowed tax collector as ex officio salary, less credit of $13.46—$34.15." The appellant predicates the right to receive "2½ per cent." instead of "1/20 of 1 per cent." commissions upon the sole ground that the commissioners' court made no order whatever during 1926 fixing the percentage payable to the treasurer. The claim of the county was correct that the previous order of July, 1925, being not changed or modified, continued in effect and was controlling for the year 1926. Kaufman County v. Gaston (Tex. Civ. App.) 273 S. W. 894.

■ Item 3. School funds. This item, which was denied entirely, was a claim of one-half of 1 per cent. commissions for receiving and disbursing the available public free school

fund and the common school fund arising during the years 1926 and 1927. The county judge testified:

"We refused to and did not pay her any commissions on any school funds. The Farmers' & Merchants' National Bank is the depository and treasurer for the school funds, and are under bond as required by law and by the State Superintendent That bank is the depository for the school fund, and the commissioners' court of this county had nothing to do with the funds other than take the bond. Under the district system the school funds are handled and disbursed by the trustees of the district, and upon their order drawn on the county depository and approved by the county superintendent they are paid out."

The appellant testified:

"I think the Farmers' & Merchants' National Bank of Henderson is the depository for the school funds of Rusk County, as well as for all the other funds. They are the regular bonded depository for Rusk County, and were such in the years of 1925, 1926 and 1927."

In view of this admitted fact of a regularly designated and bonded county depository for school funds, the appellant would be excluded from the right and not be entitled to receive and disburse the school funds. It is expressly provided by article 2549, R. S., that as soon as the bond shall be given by the designated depository and approved by the commissioners' court, "it shall also be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the State and such county and its various districts and other municipal subdivisions, in such depository or depositories, as soon as collected." It is also the duty of the county treasurer to immediately transfer all funds on hand to the county depository. A penalty is imposed upon both the treasurer and the tax collector for failure to so deposit the funds when a county depository is duly selected and gives bond. And article 2828, R. S., expressly provides that thereafter "no commission shall be paid for receiving and disbursing school funds." In the case of Horton v. Rockwall County (Tex. Civ. App.) 149 S. W 297, all of the applicable statutory provisions were reviewed and construed. It was there determined that article 2828 would prevail over article 3942, as the general act both intended and in effect provided that it should, in case a depository was duly selected and gave the bond required. The two articles were not intended to be repugnant and conflicting in case a depository was duly authorized. Article 3942 was a provision of a previous enactment generally allowing county treasurers commissions on school funds as a part of fees of office. As in the above case determined, upon proper consideration of all its provisions, the statute as a whole intended and did place the immediate and exclusive custody of the school funds in the county depository when duly selected and bonded, and required the disbursement of such funds otherwise than by or through the county treasurer, and expressly provided that no commission should thereafter be paid for receiving or disbursing the funds. In view of that construction of the statutory provisions, the appellant, in the circumstances, would not be entitled to the commissions sought.

■ Item 4. Commissions claimed as owing during the period between July 1, 1925, and January 1, 1926, and during the year 1926, viz.: "2½ per cent. on $39,141.10 received and disbursed, being money borrowed from Farmers' & Merchants' National Bank, less credit of $94.26—$884.26; 2½ per cent. on money furnished Rusk County by the Farmers' & Merchants' National Bank under written contract during 1926, amounting to $26,030.60—$650.76."

The facts in relation to this item are: In July of 1925 the county had no available funds with which to pay current expenses and road work and supplies. There was indebtedness to various parties payable out of such funds. It was necessary to continue the work and incur further indebtedness before the county taxes were collected and made available as cash on hand. The commissioners' court then entered into an agreement with the Farmers' & Merchants' National Bank, the duly selected county depository, by which the bank agreed "to purchase without discount or deduction, warrants, vouchers or checks, not in excess of Twenty-five Thousand Dollars at any one time, drawn by authority of the commissioners' court in payment of legal claims or debts against the county when said funds are not available to the credit or funds upon which the said warrants, vouchers or checks are drawn. The bank agrees to carry the warrants, vouchers or checks which are to be purchased in accordance with the terms of this contract, and which are not to aggregate a greater sum than Twenty-five Thousand Dollars at any one time, without interest or other charges to the commissioners' court or county."

The bank was to carry the warrants so purchased from the holders thereof until such time as the taxes of the county were collected and the same could be paid out of the tax money of the county. Under this agreement the bank paid in full and without discount or charge of interest each and every deficiency warrant when issued and as presented by the various holders thereof. The holder of the deficiency warrant would present and assign it to the bank, and the bank made payment of it direct to the holder. This arrangement continued until and through the year 1926. Numerous deficiency warrants were paid, aggregating the sums stated in the appellant's account. It appears that when the county col-

lected its taxes in the fall of 1925 and of 1926, respectively, the bank received the money paid on the deficiency warrants out of the taxes. There never was any sum of money placed by the bank to the credit of the county with which to pay the warrants. The bank was paid and received the money on the deficiency warrants only as holder or transferor of the same as and when the county taxes were collected. The appellant as treasurer, as admitted by her, was paid and collected her full commissions on the taxes when collected and placed in her custody as treasurer. She was also paid, as admitted, her full commissions for disbursing such taxes when the deficiency warrants presented by the bank were registered by her. The claim she now makes for the additional compensation is founded upon the contention that the agreement with the bank to purchase and become the holder of the various deficiency warrants as and when issued was, in legal effect, "a loan of cash money for and in behalf of the county, and became funds of Rusk County." The point made is thus stated by appellant: "The county treasurer was entitled to the commissions claimed because the bank purchased the warrants for and in behalf of the county in the way of a loan or advancement of cash money to the county as county funds, and such loan debt was paid out of the taxes of the county."

It is believed that the trial court was authorized to conclude that the transaction was not in fact a direct loan of money to the county to take up and discharge deficiency warrants. No sum of money was ever deposited by the bank to the credit of the county. The bank merely paid each warrant holder the amount of his warrant when presented, as the consideration therefor, and took a transfer to it of the warrant from such holder. The county still remained liable for payment of the warrant, and was not relieved of any liability for payment of the warrant on account of the bank's purchasing same from the holder. By the purchase of the warrant the bank became and was only a creditor of the county instead of the original warrant holder. It is conclusively shown that the numerous warrants were finally paid by the county to the bank only as holder thereof by transfer or assignment, out of tax money received and owned by the county. The commissioners' court did not issue to the bank a separate or major warrant covering the aggregate of the amount represented by the warrants. Under the facts arising in the case of Benefield v. Marion County, 43 Tex. Civ. App. 245, 95 S. W. 713, it was determined that the trial court was warranted in concluding that the transaction was not a loan, but a sale. The fact here of a sale is more clearly established. The appellant was paid, and admits that she received, proper commissions for receiving and disbursing the tax

money paid to the bank on all the warrants purchased by and assigned to the bank.

■■ Item 5. Commissions claimed as due during the year 1927, viz.: "Two-thirds of one per cent. on receipts and disbursements of general, road, bridge, jury and automobile funds, $32,737.13—$218.25;" "one-half of one per cent. commissions on interest and sinking funds, $35,923.45—$179.61."

The county admitted to be owing, and tendered into court, the above amount of $218.25 as claimed. Thus that special item is relieved of controversy. The county further admitted and tendered into court as owing $119.74, which is the percentage of "⅓ of 1 per cent." for disbursing interest and sinking funds of $35,923.13. The appellant's claim of "½ of 1 per cent.," instead of "⅓ of 1 per cent.," arises out of certain facts which are unchallenged and here briefly referred to. The commissioners' court passed an order at the February term, 1927, fixing the commissions of the treasurer at two-thirds of one per cent. for receiving and disbursing the general road and bridge, automobile, and jury funds, and one-third of one per cent. for receiving and disbursing the interest and sinking and construction funds. In entering the order on the minutes the clerk made a clerical error as to the latter part of the order, viz., "½ of 1 per cent. for receiving and disbursing the interest and sinking and construction fund." The clerical error of recording "½ of 1 per cent." instead of "⅓ of 1 per cent." was not discovered until the May term of the court, when the appellant presented her account for allowance at the percentage of "½ of 1 per cent." The court then in session announced the error to appellant, approved her account, and entered an order allowing her claim at one-third of 1 per cent. The clerk entered the latter order of record. There was no formal order of the court to correct the error of original entry as made, but the clerk did change the "½" to read "⅓" of 1 per cent., in accordance with the true order as made in February. The appellant knew of the order as actually made in February, 1927. She testified:

"It is a fact that I knew at the time the order was made it was one-third, but I was not told that the clerk had made an error in putting it down. I was not present when the order was passed. Mr. Parker (county clerk) showed me a copy of the order as passed, and he said they (the court) might rearrange that before recording it. It was more than two months before the order as recorded was changed. I made out my bill under that recorded order of one-half of one per cent."

It is thought there was no error in allowing and approving the account, as done by the commissioners' court, for "⅓ of 1 per cent." That was the true amount of commissions allowed by the court. The order passed and entered at the May term allowing the

commissions at the true percentage fixed in the February term operated to effectually change and reform to that extent the mere clerical error in recording the order of the February term.

Appellant insists that a judgment nil dicit should have been entered against Rusk county, because no answer was ever filed by the county. The county of Rusk and the county judge and commissioners were also named as defendants in the petition. The answer filed reads: "Now come the defendants in the above cause and say that," etc. The answer was signed by attorneys as "attorneys' for defendants." The suit was in no wise against the county judge and the commissioners individually. They were merely representatives of the county. The form of the answer was broad enough, and was so intended, to include each and all of the named defendants in the suit. The word "defendants" is used in the answer without limitation, and there is nothing in the pleading to indicate that it applies to less than all. The court correctly considered the answer as filed by all the defendants jointly, the county as such included.

The judgment is affirmed.