**CITY AND COUNTY OF DALLAS LEVEE IMPROVEMENT DIST. v. RUSSELL.**

No. 1098.

Court of Civil Appeals of Texas. Waco.

Oct. 15, 1931.

Rehearing Denied Nov. 12, 1931.

W. P. Dumas, of Dallas, for appellant.

Goggans & Allison and Whitehurst & Whitehurst, all of Dallas, for appellee.

ALEXANDER, J.

This was an action by J. E. Russell against the City and County of Dallas Levee Improvement District to recover the sum of $15,000 commissions and fees alleged to be due him as county treasurer of Dallas county and as ex officio treasurer of said levee improvement district. A trial without a jury resulted in a judgment for plaintiff for the sum of $4,747.26. The defendant appealed.

The appellee, Russell, was the county treasurer of Dallas county for two terms, ending January 1, 1929. The levee improvement district was created in 1926 and in 1928 voted bonds to the amount of $6,000,000. A part of these bonds were sold during the same year and the proceeds thereof were placed by the district supervisors in a bank depository selected by them. These funds were later expended by the supervisors on warrants drawn directly on the depository and without the supervision of the county treasurer. It was Russell's contention that he, as county treasurer of Dallas county, was ex officio treasurer of the levee improvement district; that under the law he was entitled to receive and disburse all funds belonging to said district and was entitled as compensation therefor a commission of one-fourth of one per cent. of all funds so received by him as such treasurer; that the district actually received $6,000,000 during his term of office as the proceeds of the sale of its bonds; and that by reason thereof he was entitled to said sum of $15,000. He contends that although he did not actually receive and handle said funds, that since he was entitled to receive the same and was at all times ready, able, and willing to receive said funds and to discharge his duties as treasurer of said district, he was entitled to the same commission as though he had fully discharged said duties.

The appellant, levee improvement district, contends that the appellee was entitled to a commission only on the funds actually received by him; that the law contemplated that the treasurer should handle only the funds received from taxes collected. and not the funds received from the sale of its bonds; that under the law the proceeds of the sale of its bonds were required to be paid directly into the bank depository selected by the supervisors; and that since this procedure was followed, the treasurer was not entitled to receive, and had not received, said funds and therefore was not entitled to a commission thereon.

Revised Statutes, art. 8019, provides that the county treasurer of the county in which the levee improvement district is situated, shall be ex officio the treasurer of the Levee Improvement District. It requires such treasurer to execute a bond, payable to the district, "in a sum equal to one and one-fourth of the taxes contemplated to be paid over in any one year, or such other or further amount as the board of supervisors of the district may require." It further provides: "The treasurer, as compensation for his services, shall be allowed not exceeding one-fourth of one per cent upon sums received by him by and on behalf of such levee improvement district." Under this article, the appellee was made the treasurer of the district and was entitled to a commission on all funds received by him as such treasurer. He did not actually receive any funds, but the material question is: Was he legally entitled to receive the funds for which the bonds were sold?

Revised Statutes, art. 8021, provides that: "The board of supervisors [of the district] shall select a depository or depositories for funds of the district and the county treasurer shall deposit such funds of the districts in such depository or depositories as the supervisors may direct."

Revised Statutes, art. 8011, provides that the representative of the district, who sells its bonds, "shall promptly pay over to the proper treasurer or depository the proceeds of such bonds, to be placed to the credit of such levee improvement district."

It is appellant's contention that the provisions of article 8011 requiring the party selling the bonds to pay the proceeds thereof to the "proper treasurer or depository," means the "proper treasury and depository," which, according to its contention, is the depository bank selected by the supervisors under the provisions of article 8021, and that by reason thereof it was never contemplated that such funds should come into the hands of the county treasurer or treasurer of the district. It is further contended that this idea is strengthened by the provisions of article 8019 fixing the amount of the treasurer's bond at

a sum equal to one and one-fourth of the taxes contemplated to be paid in any one year. It argues that since the amount of the bond to be given is determined by the amount of taxes to be collected, this indicates the legislative intent that the treasurer should handle only the funds received from taxes and not the funds received from the sale of the bonds.

The provisions of article 8011 requiring that the proceeds of the sale of such bonds shall be paid to the "proper treasurer or depository" is not clear. We must look to the entire act for the purpose of determining the legislative intent. While article 8011 makes the amount of money received by the treasurer, as such, the basis for fixing the maximum amount of his fees, it does not necessarily follow that the receiving of the money is the only service to be performed by him and for which the compensation is to be paid. He is required to perform many other services in connection with his duties as such treasurer, and in return for all of such service, he is allowed a per cent. of, or commission on, the funds received by him as such treasurer. Article 8020 requires him as treasurer to open an account with each levee improvement district in the county, showing the money received and paid out by him for and on behalf of the district. It further provides that he shall pay out no money except upon a voucher signed by two of the district supervisors and countersigned by the county judge. He must preserve all orders for the payment of money and shall render an accounting to the commissioners' court and the district supervisors as often as requested. It is provided by article 8023 that when the supervisors enter into a contract for the construction of the district, or any part thereof, the supervisors shall immediately notify the treasurer, and he shall open an account in the name of that particular contract and set aside to said account an amount of money equal to the contract price therein provided, and shall only pay out said funds for work done under said contract. By article 8025 it is provided that the final payment on each contract shall be paid by warrants drawn "on the treasurer of the district." These provisions indicate very clearly that the treasurer is to have charge of, and is to be responsible for, and shall pay out, all funds belonging to the district. The compensation allowed him by the statute is to cover all of these services. It would be unreasonable to assume that the supervisors of the district had the option of paying the money for which the bonds were sold to such treasurer or to the bank depository as it elected, but that in the event such money was paid directly to the bank depository, the treasurer should nevertheless be required to discharge all of the other duties imposed on him by the statute, except that of receiving the money, and that

he should not receive any compensation therefor.

██ The fact that the amount of the treasurer's bond is governed to a certain extent by the probable amount of taxes to be collected in any one year does not imply that he is to handle only the funds derived from taxes. The supervisors in fixing the amount of the bond are required to fix it at an amount equal to one and one-fourth of the probable taxes to be collected in any one year, "or such other or further amount as the board of supervisors of the district may require." This gives the supervisors latitude so that the bond may be fixed high enough to cover the proceeds of the sale of the bonds, as well as the probable amount of the taxes to be collected. It was doubtless contemplated that the first treasurer of the district, who was in office at the time the bonds were sold and the district was being constructed, would probably handle the bond money and his bond would have to be fixed much higher. In later years after the district had been constructed and the bond money expended, the treasurer would handle nothing but taxes collected to redeem the bonds, and his bond would be much less. We presume that the supervisors were given this latitude in fixing the amount of this bond so that the bond, if necessary, could be made large enough to cover the proceeds received from the sale of the bonds.

Moreover, we think that the provisions of article 8025 exclude the idea that the treasurer of the district is to handle money received from the collection of taxes only, and that it shows conclusively the intent of the Legislature that such treasurer should receive and disburse the funds received from the sale of the bonds. This article provides that the final payment on each contract for the construction of the district shall be paid by warrants drawn "on the treasurer of the district." This statute has provided the exact method (and we presume the exclusive method) by which warrants for the construction of the district could be paid. The district is to be constructed with the proceeds received from the sale of the bonds, while the funds received from the collection of taxes are for the redemption of the bonds. A warrant drawn for the construction of the district in compliance with the provisions of this article would necessarily be drawn on the bond fund and not on the tax fund. How could the treasurer of the district pay these warrants for the construction of the district if he has not been intrusted with the funds received from the sale of the bonds? Why should the warrants be drawn on the treasurer for a part of the bond money when no part of this fund has been intrusted to him? We think this statute shows conclusively that the proceeds of the sale of the bonds were to be paid to the treasurer of

the district. The provisions of article 8011 requiring the proceeds of the sale of the bonds to be paid to the "proper treasurer or depository" means the county treasurer of the county having jurisdiction of the levee improvement district as provided in article 7974. If this construction be given the provisions of article 8011, all other provisions of the act will harmonize. We therefore hold that the appellee as ex officio treasurer of the district was entitled to receive the funds for which the bonds were sold.

■ The appellant next contends that, even though it should be held that the appellee was legally entitled to receive the funds and to discharge the duties as treasurer of said district, since he did not actually perform such duties, he is not entitled to any compensation therefor. The appellee alleged and proved that he was at all times ready, able, and willing to perform such duties, and he contends that since it was the fault of the supervisors that he did not perform such duties, he is entitled to his compensation. Since appellee was entitled to receive the funds for which the bonds were sold, and, if he had received same, he would have been entitled to a commission thereon, he is entitled to a commission on said funds although they were actually, but without authority, received and disbursed by another agency and not actually received and disbursed by him. The emoluments and perquisites of the office were property rights belonging to the appellee, and the supervisors of the district could not deprive him of his right thereto by handling the funds in a manner not authorized by law. Bastrop County v. Hearn, 70 Tex. 563, 8 S. W. 302; Beard v. City of Decatur, 64 Tex. 7, 53 Am. Rep. 735; Llano County v. Moore, 77 Tex. 515, 14 S. W. 152; Wall v. McConnell, 65 Tex. 397; Waller County v. Rankin (Tex. Civ. App.) 35 S. W. 876.

■ The appellee never executed the bond required of him by article 8019, and the appellant contends that by reason thereof he was not ready, able, and willing to act as treasurer of the district. Under the above statute, it is made the duty of the district supervisors to fix the amount of the treasurer's bond. The treasurer could not and was not required to execute a bond until the amount thereof had been determined by the supervisors. His failure, therefore, to execute the bond did not defeat his right to the compensation.

■ Under the provisions of article 8019, the district supervisors were entitled to fix appellee's compensation at such amount as they saw fit, not to exceed one-fourth of one per cent. of the funds received during appellee's term of office. The supervisors failed to fix the amount of such commission, and under the law the appellee was entitled to the full amount of one-fourth of one per cent. of the funds so received, that being the maximum amount allowed by statute, and the trial court correctly so held. Bastrop County v. Hearn, 70 Tex. 563, at page 567, 8 S. W. 302; Baxter v. Rusk County (Tex. Civ. App.) 11 S.W.(2d) 648, par. 1; Montgomery County v. Talley (Tex. Civ. App.) 169 S. W. 1141, par. 2.

■ It seems that during appellee's term of office, the district contracted to sell the entire amount of its bonds amounting to Six Million Dollars. The bonds, however, were not all delivered at one time, but were delivered and paid for from time to time as the district needed the money. During appellee's term of office the district delivered a part of the bonds and received the sum of $1,709,225.69 therefor. The trial court allowed the appellee a commission of one-fourth of one per cent. on the above sum. By proper assignment of error, appellee contends that since all of the bonds were actually contracted to be sold during his term of office, he was entitled to a commission on the entire $6,000,000. We do not agree with this contention. The money was not received until the bonds were actually delivered and paid for. While the total amount of bonds were contracted to be sold during appellee's term of office, only a part of them were actually delivered and paid for. The concern that originally contracted for the bonds failed financially before accepting and paying for all of them, and it became necessary to resell the remaining bonds to another concern. The resale occurred after the expiration of appellee's term of office. The appellee was only entitled to a commission on the funds actually received by the district during his term of office. Wall v. McConnell, 65 Tex. 397.

■ The appellee further contends that it was made his duty to register the bonds as they were issued; that he was at all times ready and able to do so, but that the supervisors failed to provide the necessary book in which to register the bonds as is provided in article 8008, and failed to call upon him to perform this service; that under the law he was entitled to 5 cents for registering each of the six thousand bonds, making a total of $300. The trial court refused to allow any part of this item. Article 8008 makes it the duty of the county treasurer to register the bonds as they are issued, and the treasurer is allowed therefor the same fee that is allowed county clerks for recording deeds. It is agreed that the fee for such service, if allowable in this case, would be 5 cents per bond. We think the word "issued," as used in article 8008, means "sold and delivered or put into circulation." Hidalgo County Drainage District v. Davidson, 102 Tex. 539, 120 S. W. 849; Steinbruck v. Milford, 100 Kan. 93, 163 P. 647. We think that the bonds were to be registered when and as sold and delivered. The record shows that during appellee's term of office, seventeen hundred and fifty of the bonds were

delivered and put into circulation. The appellee was entitled to the sum of $87.50 for registering these bonds, in addition to the judgment awarded him by the trial court.

The judgment of the trial court will be reformed so as to allow the appellee the additional sum of $87.50, with 6 per cent. interest thereon from January 1, 1929.

The judgment of the trial court as reformed, is affirmed.